```
              UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                     WESTERN DIVISION
```

**UNITED STATES OF AMERICA**

**v.**                                    CRIMINAL NO. 5:25-CR-6-DCB-LGI

**ANTHONY MARQUISS JONES**

<u>MEMORANDUM OPINION AND ORDER</u>

BEFORE THE COURT is Anthony Marquiss Jones ("Defendant")'s Motion to Suppress Evidence, [ECF No. 35] (the "Motion"), in which Defendant asks the Court to suppress incriminating evidence of a firearm and inculpatory statements. At Defendant's request, the Court held an in-person evidentiary hearing on the Motion on January 22, 2026. After the hearing, the Court ordered supplemental briefing, which the parties have submitted. [ECF Nos. 44, 48 & 50]. Having studied the Motion, the parties' submissions, the hearing testimony and evidence, and relevant legal authority, the Court finds that the Motion should be denied.

BACKGROUND

In July 2025, the grand jury returned an indictment that charged Defendant with one count of possession of a firearm by a person who has previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of

1

18 U.S.C. § 922(g)(1), and one count of possession of a machinegun, in violation of 18 U.S.C. § 922(o). [ECF No. 3].

　　The evidence shows that Defendant pleaded guilty in 2022 in the Circuit Court of Lincoln County, Mississippi, to conspiracy to commit armed robbery under Sections 97-1-1 and 97-3-79 of the Mississippi Code.  [ECF No. 23-1].  The state Circuit Court Judge sentenced Defendant to the custody of the Mississippi Department of Corrections ("MDOC") for five years, subject to a five-year suspension of custody if Defendant successfully completed five years of post-release supervision with MDOC.  Id. at 1.  The express terms of his supervised release were included in the judge's Sentencing Order and required, among other things, that Defendant report within 24 hours to his probation officer and that he possess no firearms or deadly weapons.  Id. at 1(¶1); 2(¶6).  His post-release supervision conditions also required that he: "Permit his/her Probation Officer or any Law Enforcement Officer to visit him/her at home or elsewhere at any time;", Id. at 2(¶14); and "Truthfully and fully answer any questions asked by his/her probation officer or any Law Enforcement Officer and Consent to a search at any time of his/her person, automobile, or residence by his/her Probation officer or any other law enforcement official … ."  Id. at 3(¶19).

On day one of his supervised release, Defendant violated the terms of the sentencing order by failing to report to his probation officer. [ECF No. 23-2](sealed). He remained in continuous violation of the state court sentencing order at the time of his arrest in February 2024. [ECF No. 23] at 2; [ECF No. 23-2] (sealed).

Brookhaven Police Department Investigator Timothy Sander (currently employed as a Probation Agent with MDOC) testified at the suppression hearing that a female victim called the police department on February 3, 2024, to report that Defendant had raped her in Room 125 at Motel 6 in Brookhaven earlier that morning. Hr'g Tr. [ECF No. 49] at 4-5. Investigator Sander spoke with the victim within a couple hours of the alleged assault and ran a background check on the Defendant. Id. at 5. According to Investigator Sander, the background check revealed outstanding warrants for Defendant "with MDOC and other agencies, including Brookhaven." Id. at 6.

Investigator Sander further testified that he and three other Brookhaven police officers went to Defendant's room at Motel 6 to serve the MDOC warrant and arrest Defendant. Id. at 8-9. The desk clerk gave Investigator Sander a key card to the room, but the card failed to open the door. Id. at 9. Investigator Sander resorted to continually "banging on the door" and yelling "unlock the door," while the other officers

3

waited for Defendant to open it.  Id.  During Defendant's delayed response, Investigator Sander explained that he heard a toilet flushing in the room, and he became concerned that Defendant was destroying evidence, particularly evidence such as condoms or anything related to a sexual assault.  Id. at 9-10. Brookhaven Police officer Ronnie Murray, currently employed as a detective with the City of Hazelhurst, Mississippi, was one of the officers with Investigator Sander at Defendant's motel room door.  Id. at 33-34.  Officer Murray testified that he believed he heard a porcelain bathroom top moving around inside the room. Id. at 34.  Once Defendant complied and opened the door, Investigator Sander put him in custody.  Id. at 10-11.  The other officers cleared and searched the room and bathroom for sexual assault evidence.  Id. at 11-12.  Because Investigator Sander believed that he had heard the toilet flushing, some officers went straight to the bathroom to look for evidence. Id. at 12.  Officer Murray testified that, having heard the porcelain noise, he looked around the toilet where he noticed that the "toilet top was kind of crooked."  Id. at 35.  He lifted the toilet tank lid and saw what he believed to be "the butt of a handgun."  Id.  Investigator Sander then entered the bathroom and saw the butt of a pistol in the toilet tank, which he photographed.  Id. at 19-20; Gov't Hr'g Ex. 4, [ECF No. 42-4].

At the hearing, the government offered into evidence bodycam videos from Investigator Sander, Gov't Hr'g Ex. 3, [ECF No. 42-3], and an officer who was assisting Officer Murray, Gov't Hr'g Ex. 5, [ECF No. 42-5].  Among other things, the bodycam videos show Defendant's arrest, his receipt of Miranda warnings, and the officers' search of the motel room, including the bathroom.  The Court received the bodycam videos into evidence without objection, [ECF No. 49] at 13 & 37, and portions of them were played and explained by Investigator Sander and Officer Murray in open court.

After his arrest, the officers moved Defendant from the motel to an interview room at the Brookhaven Police Department, where an investigator delivered a second set of Miranda warnings to Defendant.  [ECF No. 44] at 3; Police video of interview, [ECF No. 44-2] at 33:35 (filed conventionally under seal).  The parties do not dispute – and a police video confirms – that Defendant admitted to putting the gun in the toilet tank. Police video of interview, [ECF No. 44-2] at 41:24-26 (filed conventionally under seal).  The parties vigorously dispute, however, whether the police search of Defendant's motel room was illegal and whether the firearm and Defendant's inculpatory statements should be suppressed as fruit of the poisonous tree. [ECF No. 35] at 4-5; [ECF No. 36] at 10.

**DISCUSSION**

Defendant argues that the Court should suppress the firearm that the police found in the motel toilet tank and any inculpatory statements because the officers searched the motel room without first obtaining a search warrant, and the government cannot meet its burden to show that the search qualified for an exception to the warrant requirement. [ECF No. 35] at 2-6. In opposition, the government asserts that: (i) the search was lawful pursuant to a court-ordered condition of Defendant's probation and an active MDOC arrest warrant for Defendant; and (ii) the exigent-circumstances exception applies because there was probable cause to indicate that evidence of the reported rape was in the motel room and an exigency existed that Defendant would be or was using the motel room toilet to destroy such evidence. [ECF No. 36] at 5-10.

At the outset, the Court notes that it observed the demeanor of Investigator Sander and Officer Murray at the evidentiary hearing and carefully considered their testimony under direct and cross-examination. Having heard the live testimony of these witnesses, and having had the opportunity to judge their credibility, the Court found their testimony to be credible. It is therefore appropriate for the live testimony of these law enforcement officers to form a part of the basis for

the Court's ruling on the Motion. United States v. Wright, 57 F.4th 524, 530 (5th Cir. 2023); United States v. Gibbs, 421 F.3d 352, 357 (5th Cir. 2005); Louis v. Blackburn, 630 F.2d 1105, 1109 (5th Cir. 1980) ("One of the most important principles in our judicial system is the deference given to the finder of fact who hears the live testimony of witnesses because of his opportunity to judge the credibility of those witnesses.").

In supplemental briefing, Defendant challenges the credibility of the officers' testimony at the hearing with citations to specific videotape frames contained in the government's video evidence. [ECF No. 50] at 6. Defendant interprets the cited body camera footage to contradict, among other things, Officer Murray's testimony regarding the toilet lid being askew. Id. Defendant correctly cites to Fifth Circuit case law, and United States v. Wright in particular, where the appellate court held that when testimony conflicts with video evidence, our court must view the "'facts in the light depicted by the videotape.'" Wright, 57 F.4th at 530 (quoting Scott v. Harris, 550 U.S. 372, 380-81 (2007)). The Court has reviewed all the video evidence admitted at the hearing and submitted in supplemental briefing, including the specific video frames at the time stamps cited by Defendant, and the Court does not find Defendant's interpretation of the video evidence to be persuasive. For example, Defendant argues that,

7

contrary to Officer Murray's testimony, the body camera footage shows the toilet lid resting squarely on the tank at time stamp 1:41 of Government's Exhibit 5.  [ECF No. 50] at 6; contra testimony of Officer Murray on direct and cross examination at [ECF No. 49] at 35, 38-39, 40-41.  However, the bodycam video footage cited at time stamp 1:41 captures only a portion of the toilet lid at an angle that is insufficient to conclude definitively that the lid was sitting squarely as Defendant claims.  Giving deference to the bodycam footage cited by the defense does not oblige the Court to discredit the officers' testimony.

   A. Probation Considerations

"[P]robationers ... do not enjoy the 'absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.'" Griffin v. Wisconsin, 483 U.S. 868, 874 (1987) (quoting Morrisey v. Brewer, 408 U.S. 471, 480 (1972)).  As Justice Scalia further explained: "A State's operation of a probation system . . . presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." Griffin, 483 U.S. at 873-74.  The Court finds that any such departures were justified and lawful in Defendant's case.

In briefing and at the suppression hearing, counsel debated the meaning and scope of Paragraph 19[1] of the Mississippi state court restrictions on Defendant's supervised release. The government maintains that Defendant's probationary status, buttressed by Paragraph 19 of his supervised release conditions, imposes a search condition as part of Defendant's probation that permitted the police to search the motel room without the customary Fourth Amendment warrant and probable-cause requirements. Defendant counters that Paragraph 19 required the police to verbally request consent from Defendant to search the motel room before entering without a search warrant, and the bodycam evidence proves that the police "never asked Mr. Jones to consent to search, nor did Mr. Jones gratuitously grant consent." [ECF No. 39] at 2; Hr'g Tr. [ECF No. 49] at 54-58. Arguing that the key part of the supervised release requirement is the word "consent", defense counsel proposed at the hearing that Paragraph 19 required law enforcement to give Defendant the opportunity to consent to the search by first asking his

---

[1] Paragraph 19 of Defendant's court-ordered Post Release Supervision Conditions provides in full: "Truthfully and fully answer any questions asked by his/her probation officer or any Law Enforcement Officer and Consent to a search at any time of his/her person, automobile, or residence by his/her Probation officer or any other law enforcement official;". [ECF Nos. 23-1, 36-1, 42-2] at 3(¶19).

permission. [ECF No. 49] at 56. Then, according to the defense, Defendant needed to deny permission to search before a violation of his probation would occur. Id. This strikes the Court as an interpretive gloss on the plain language of Paragraph 19 that adds a requirement not contained in the state court order or in the teachings of controlling precedent. This Court will stick to the plain language and to precedent. See, e.g., Griffin, 483 U.S. at 872-74 (denial of suppression motion affirmed where warrantless non-consensual search of a probationer's home based upon a tip from a police officer that there were or might be guns in the probationer's apartment was based on reasonable grounds and proceeded pursuant to a state regulation); United States v. Knights, 534 U.S. 112, 121-22 (2001)(holding that a warrantless search supported by reasonable suspicion and authorized by a condition of probation was reasonable within the meaning of the Fourth Amendment); United States v. Keith, 375 F.3d 346, 350 (5th Cir. 2004)(reasonable suspicion standard applies to searches of probationers even when there is no written condition of probation that authorizes searches or no explicit regulation that permits the search of a probationer's home). The Court finds that the evidence presented in this case demonstrates that the police had the reasonable suspicion necessary under controlling precedent to conduct a warrantless non-consensual search of Defendant's motel

room. This finding is based on Defendant's court-ordered conditions of probation, the active MDOC arrest warrant, and the report from - and Investigator Sander's conversation with - the alleged sexual assault victim who identified: (i) herself, (ii) Defendant by name, and (iii) the exact motel room where the alleged assault took place and where Defendant could be founded. Hr'g Tr. [ECF No. 49] at 4-6; see United States v. Vickers, 540 F.3d 356, 361 (5th Cir. 2008) (presumption of credibility exists when an identified victim reports a crime to the police).

B. Exigent Circumstances Exception

Additionally, the Court finds on the facts of this case that the exigent-circumstances exception to the customary Fourth Amendment search warrant requirement applies. For the exception to apply, the government must show that the officers' entry into the motel room was supported by probable cause and justified by an exigent circumstance. United States v. Aguirre, 664 F.3d 606, 610 (5th Cir. 2011); see also United States v. Cordova-Espinoza, 49 F.4th 964, 968 (5th Cir. 2022) ("The Fourth Amendment's protection against the unreasonable search of a person's home also protects guests staying in a hotel room.").

(i) Probable Cause. The police have probable cause to search a residence if, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be

11

found in a particular place.  <u>Aguirre</u>, 664 F.3d at 610.  Having carefully studied the record in this case, the Court finds that the totality of the circumstances presented supports a conclusion that the police officers had a fair probability of finding evidence of a sexual assault in the precise motel room where the alleged rape occurred provided that the search was executed without delay to avoid the loss or destruction of evidence typically collected in a sexual assault investigation.  Based on Investigator Sander's law enforcement experience, the fact that he spoke directly with the reporting victim who correctly identified the particular motel room where the police found Defendant and that this conversation took place shortly after the alleged sexual assault occurred, and further based on the investigating officers' understanding of the type of evidence likely to result from the alleged crime, the Court concludes that the officers had probable cause to enter and search Defendant's motel room.

(ii) <u>Exigent Circumstance Factors</u>.  While there is no set formula for determining when exigent circumstances may justify a warrantless entry, the Fifth Circuit has identified a non-exhaustive list of factors that courts may consider in making what essentially is a factual determination:

(1)  the degree of urgency involved and the amount of time necessary to obtain a warrant;

    (2) the reasonable belief that contraband is about to be removed;

    (3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought;

    (4) the information indicating that the possessors of the contraband are aware that the police are on their trail; and

    (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of it and to escape are characteristics in which those trafficking in contraband generally engage.

E.g., Aguirre, 664 F.3d at 611; United States v. Blount, 123 F.3d 831, 837 (5th Cir. 1997)(en banc); United States v. Rico, 51 F.3d 495, 501 (5th Cir.), cert. denied, 516 U.S. 883 (1995).

    The victim reported the alleged rape to the Brookhaven police in the early morning hours of Saturday, February 3, 2024. The perishable nature of sexual assault evidence (i.e., semen, blood, and bodily fluids) supports the urgent need for the police to secure the motel room quickly and prevent any destruction, loss, removal or diminishment of evidence such as sheets, bedding, clothing, underwear, condoms, towels and tissues.  Hr'g Tr. [ECF No. 49] at, e.g., 10, 12, 19, 36; see also Gov't Hr'g Ex. 3 (video of police bodycam showing search of Motel 6, Room 125) [ECF No. 42-3] (filed conventionally).

    The fact that Defendant was in violation of his probation order and subject to an active MDOC arrest warrant also supports the urgency of the situation.  Bodycam video that was entered

into evidence at the hearing shows that the police arrived at the motel room around 5:42 a.m. on February 3, 2024, and, as the government points out, this was not on a weekday when a court would be open and readily available to issue a search warrant. [ECF No. 36] at 9; accord United States v. Ojonugwa, No. 3:12-CR-132-M(1), 2013 WL 1747801, at *6 (N.D. Tex. Apr. 23, 2013) ("The Court further notes that the officers would likely have experienced a delay in obtaining a warrant between 3 and 6 a.m. on a Saturday … .").

Defendant's delay in opening the motel room door - despite Investigator Sander's unmistakable instruction to do so - and the officers' belief that they heard sounds of rumbling movements, the toilet flushing, and porcelain scraping support a finding of exigency. Hr'g Tr. [ECF No. 49] at, e.g., 9-12, 30-32, 34-36, 45. Based on what he heard on the other side of the door and his ten years of law enforcement experience at that time, Investigator Sander testified that he was concerned and had a suspicion that Defendant was destroying evidence of a sexual assault. Id. at 31-32. Officer Murray testified that he heard movement in the motel room, including a "porcelain against porcelain" noise, and he was concerned that someone was either destroying or hiding evidence of a rape, such as "panties, underwear, condoms". Id. at 34-36. The Court concludes that the officers had a reasonable belief that evidence of the

reported allegation of sexual assault was about to be removed or diminished inside the motel room, including the bathroom.

At the hearing, defense counsel questioned Investigator Sander regarding what looks like yellowish urine in the motel toilet bowl on a frame from the bodycam video. Id. at 25-27, 31. In closing arguments, the defense surmised that Defendant did not have time to flush the toilet twice and urinate again before he opened the motel room door. Because it appeared on the bodycam video frame that urine remained in the toilet bowl, defense counsel proposed that the toilet could not have been flushed, and any reasonable suspicion or probable cause to search the toilet was therefore nonexistent. Id. at 53-54. The Court is not persuaded and cannot base its entire determination on a proposed theory that is not evidence. United States v. Thomas, 627 F.3d 146, 158 (5th Cir. 2010) (argument of counsel is not evidence). The Fifth Circuit has warned that the purpose of an exigent circumstances analysis "is *not* to examine each act in isolation and inquire whether the officers *could* have acted differently." Blount, 123 F.3d 831 at 838 (emphasis in the original). The hearing testimony and bodycam videos prove that the officers' actions in this case relied on more than a flushing toilet. See United States v. Daniels, 930 F.3d 393, 401 (5th Cir. 2019) (exigent circumstances existed where "the officers relied on more than just the flush."). While

acknowledging that reasonable minds may differ, this Court finds no reason to second-guess the judgment of experienced law enforcement officers regarding the risks of the situation at that time.  <u>Blount</u>, 123 F.3d 831, 838.  The Court concludes that the police search of Motel 6 Room 125 was justified by exigent circumstances.

## CONCLUSION

Having found that the police search of Defendant's motel room was lawful under the circumstances, the Court must deny Defendant's Motion to Suppress Evidence.  The Court has considered all arguments presented in the parties' submissions and at the suppression hearing.  Any argument that is not specifically addressed in this Opinion would not affect the Court's decision.

Accordingly,

IT IS ORDERED that Defendant's Motion to Suppress Evidence, [ECF No. 35], is **DENIED** in its entirety.

SO ORDERED this 3rd day of March 2026.

                        /s/  David C. Bramlette
                        UNITED STATES DISTRICT JUDGE